IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TERI JONES, | REPORT AND RECOMMENDATION |
| Plaintiff, | |
| v. | Case No. 2:18-cv-00537-JNP-JCB |
| CONVERGYS CMG UTAH, INC., | District Judge Jill N. Parrish |
| Defendant. | Magistrate Judge Jared C. Bennett |

This case was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is Defendant Convergys CMG Utah, Inc.'s ("Convergys") Motion for Summary Judgment.[3] Under DUCivR 7-1(f), the court has concluded that oral argument is unnecessary and, therefore, decides the motion on the written memoranda. Having reviewed the motion and relevant law, the court renders the following Report and Recommendation that the district court grant Convergys's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On July 10, 2018, Plaintiff Teri Jones ("Ms. Jones") filed suit against Convergys alleging causes of action for failure to accommodate, disability discrimination, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 to 12212.[4]

---

[1] ECF No. 25.
[2] ECF No. 35.
[3] ECF No. 27.
[4] ECF No. 3.

Convergys moved for summary judgment on November 1, 2019.[5] Ms. Jones received the motion via mail on November 4, 2019,[6] but failed to file a response by the required deadline.

On December 27, 2019, however, the court received a submission from Ms. Jones entitled "motion to deny summary judgment [and] postpone, hold, and/or stay any and all further court activity to obtain new legal counsel."[7] The court liberally construes this filing as both a response to the motion for summary judgment and a motion to stay legal proceedings until new counsel can be obtained. Notwithstanding the untimeliness of Ms. Jones's response, Convergys does not allege, and the court does not see, any prejudice to Convergys from the court's acceptance of the document. Therefore, the court accepts Ms. Jones's tardy response to Convergys's motion.

The court recognizes that Ms. Jones is proceeding pro se. Therefore, the court will "construe [her] pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). That said, Ms. Jones's pro se status does not discharge her from complying with the court's rules and procedures, and the court will not assume an advocacy role on Ms. Jones's behalf. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

Despite a liberal reading, Ms. Jones's response did not controvert any of the material facts in Convergys's motion. Consequently, the court considers those facts undisputed for

---

[5] ECF No. 27.
[6] ECF No. 29-1.
[7] ECF No. 30.

purposes of summary judgment.[8] Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly . . .

address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the

fact undisputed for purposes of the motion."); *see also Hamilton v. Dep't of Veterans Affairs*,

No. 16-2101-DDC-JPO, 2016 WL 7326280, at *2 (D. Kan. 2016) (explaining that, on summary

judgment, "[a]lthough the Court affords some leeway to pro se parties, it cannot merely overlook

Plaintiff's failure to state and oppose material facts in compliance with the local rules, and

Plaintiff's failure to submit admissible evidence" (quotations and citation omitted)).

### FACTUAL BACKGROUND

1.      Ms. Jones worked at Convergys as a customer support associate from August

2004 to March 9, 2016. (ECF No. 3, ¶¶ 9, 23).

2.      As a customer support associate, Ms. Jones was assigned to a team responsible for

handling customer service for Chrysler customers. Her daily tasks included helping customers

resolve service issues and answering questions about products, warranties, and other vehicle

issues—all via telephone. (ECF No. 27, Ex. 1, 11:19–15:15).

3.      The essential functions of this position include: listening attentively to customer

needs and concerns; employing a courteous and professional manner in all customer interactions;

maintaining basic knowledge of client products and services; preparing complete and accurate

work, including appropriately notating accounts as required; tracking, documenting, and

---

[8] Although the court deems the facts as presented by Convergys as admitted for the purpose of this
motion, the court reviewed the record evidence cited by Convergys to confirm the asserted facts are
supported. Fed. R. Civ. P. 56(e)(3).

retrieving information in a database; responding to customer inquiries; and providing solutions to customer questions. (ECF No. 27, Ex. 1, 15:20–16:18).

4.      Customer support associates must have basic computer skills and the ability to concentrate, sit, and stand for extended periods of time. (ECF No. 27, Ex. 1, 16:24–17:15, 49:12–15).

5.      Ms. Jones was diagnosed with severe cervical spinal stenosis in 2014. Spinal stenosis causes pinched nerves, which made Ms. Jones suffer intense pain in her neck and "substantially limit[ed] her in her ability to sit, stand, lift and carry, think, concentrate, remember, begin and complete even simple tasks (manual and cognitive), interact with others, sleep and work and other major life activities." (ECF No. 3, ¶ 11).

6.      Because spinal stenosis is a progressive disease, Ms. Jones's condition progressively declined from the time she was diagnosed through the duration of her employment at Convergys. (ECF No. 27, Ex. 1, 29:6–9).

7.      Ms. Jones testified that she had problems speaking, thinking, typing, keeping records, understanding records, and fulfilling her duties at work. (ECF No. 27, Ex. 1, 56:7–10).

8.      Ms. Jones testified that the spinal stenosis made her slower at "every task" at work and that she simply "couldn't do what [she] could do before." (ECF No. 27, Ex. 1, 28:23–25, 37:10).

9.      Ms. Jones had two neck surgeries in January and June of 2015 to treat her spinal stenosis. Ms. Jones was provided extended leave from work for both surgeries. (ECF No. 3, ¶¶ 12–14; ECF No. 27, Ex. 1, 57:16–59:19).

10.     Ms. Jones testified that her supervisor, Tina Landry ("Ms. Landry") was helpful "in many ways to get the time off and the time approved for surgery." (ECF No. 27, Ex. 1, 62:18–22; *Id*., Ex. 5, p. 34).

11.     In February 2015, Ms. Jones requested the following accommodations at work: an ergonomically correct desk, a stable and secure chair, a foot stool, a double ears headset, a fan for temperature control, and light duty work. (ECF No. 27, Ex. 1, 69:21–71:4).

12.     Convergys accommodated all the requests.[9] (ECF No. 3, ¶¶ 15–16, 20; ECF No. 27, Ex. 1, 69:21–71:4; *Id*., Ex. 5, p. 34–37).

13.     Ms. Jones never requested additional coaching or training as an accommodation or in general. (ECF No. 3, ¶ 17; ECF No. 27, Ex. 1, 74:10–75:17).

14.     In February 2016, Ms. Jones completed a survey that asked questions about Ms. Landry's performance. In response to a question about Ms. Landry's coaching, Ms. Jones wrote, "What coaching?". (ECF No. 3, ¶¶ 18–19, 40).

15.     After taking the survey, Ms. Jones claims Ms. Landry began to look for ways to "justify terminating" her employment. (ECF No. 3, ¶ 40).

16.     Soon after taking the survey, Ms. Landry disciplined Ms. Jones. Ms. Jones also alleges that immediately after disciplining her, Ms. Landry stated, "I know it was you that told them that I don't give coaching." (ECF No. 3, ¶¶ 18–19, 40).

---

[9] An issue of fact exists between Ms. Jones's statements that Convergys did provide her reasonable accommodations and Ms. Landry's statements that Ms. Jones did not have accommodations. *Compare* ECF No. 30 at 3, *with* ECF No. 27, Ex. 3, ¶¶ 5–13. Notwithstanding, the conflicting accounts are immaterial because Convergys accepts Ms. Jones's interpretation of the facts as true regarding the provision of reasonable accommodations for purposes of summary judgment.

17.     As early as March 7, 2016—and possibly as late as March 8, 2016—Ms. Landry

relocated Ms. Jones to a desk that did not have accommodations. Ms. Landry told Ms. Jones the

move was temporary until she could find another desk to accommodate Ms. Jones. (ECF No. 3,

¶¶ 20, 49; ECF No. 27, Ex. 5, p. 38).

18.     On March 9, 2016, Convergys terminated Ms. Jones's employment. (ECF No. 3,

¶ 23).

19.     In June 2016, Ms. Jones applied for Social Security Disability Insurance ("SSDI")

benefits. Ms. Jones stated in her application that as of March 9, 2016, she "became unable to

work because of [her] disabling condition." (ECF No. 27, Ex. 10, p. 1; *Id.*, Ex. 1, 212:9–213:5).

20.     For her disability claim, Ms. Jones told the physician that she could not "think

through the pain. The pain was so severe to where [Ms. Jones] couldn't do [her] job." (ECF No.

27, Ex. 11, p. 1).

21.     Ms. Jones testified that if Convergys had not terminated her that she "was going

to have to take time off from Convergys for further diagnosis or treatment issues." (ECF No. 27,

Ex. 1, 187:18–24, 194:9–11, 211:18–222:17).

22.     At her deposition, Ms. Jones testified that she does not believe her termination

from Convergys was related to accommodations for her disability or requests for time off. (ECF

No. 27, Ex. 1, 74:14–19, 173:14–15).

23.     Ms. Jones also stated the following at her deposition:

> Q: So your third claim—this is on page 12 of your complaint—is
> for retaliation. And your claim there, as I understand it, is I asked
> for time off and disability accommodations and they fired me for
> it. Is that what you understand? Do you believe that?
> A: No.

> Q: You don't believe you were fired for asking for time off, do
> you?
> A: No.
> Q: Do you believe you were fired for asking for accommodations?
> A: No.

(ECF No. 27, Ex. 1, 182:15–21).

24.     Instead, Ms. Jones testified that she believes she was terminated because of the comment she made about Ms. Landry in the survey. (ECF No. 27, Ex. 1, 74:14–19, 173:14–25).

25.     Ms. Jones testified that she was a "whistleblower" who complained about her supervisor's lack of coaching and that her complaint was "a determining factor in [her] termination." (ECF No. 27, Ex. 1, 183:3–15, 173:6–15; *Id.*, Ex. 5, p. 39; ECF No. 30, p. 3).

26.     Ms. Jones testified that she lacks any evidence to substantiate her claims that Convergys discriminated against her for health issues. Specifically, Ms. Jones stated the following at her deposition:

> Q: Do you have evidence that [Convergys] targeted you for health
> issues?
> A: That's what I have been trying to acquire.
> Q: Okay. But do you have it yet? Have you acquired it yet?
> A: Not yet, no.
> Q: You'll let us know if you do?
> A: I—yes. I've—uh-huh.

(ECF No. 27, Ex. 1, 172:21–173:5).

27.     Since her deposition, Ms. Jones has not supplemented her discovery responses or deposition testimony to provide any evidence of disability bias or discrimination. (ECF No. 27, ¶ 41 n.1).

28.     Ms. Jones testified that she is disabled and unable to perform any job. Ms. Jones has not worked since her termination from Convergys. (ECF No. 27, Ex. 1, 211:18–222:17).

29.     Ms. Jones claims that her "total disability" was caused by her loss of medical insurance from Convergys and inability to receive medical treatment. (ECF No. 27, Ex. 5, p. 23, 26–27).

30.     However, at her deposition, Ms. Jones testified that she does not actually remember if she stopped going to the doctor after she was fired. (ECF No. 27, Ex. 1, 195:22–24).

31.     Ms. Jones's medical records show that Ms. Jones did not stop regularly seeing her doctor for treatment until June 2017, approximately fifteen months after her employment with Convergys ended. (ECF No. 27, Ex. 7; *Id*., Ex. 6, 17:5–24, 26:4–10).

32.     Ms. Jones's medical records also show that she saw her primary doctor, Dr. Alex Nelson, at least once or twice every two months, continuously from September 2015 to June 2017. (ECF No. 27, Ex. 7).

33.     Moreover, Dr. Nelson testified that his treatment of Ms. Jones did not change after Ms. Jones was terminated. (ECF No. 27, Ex. 6, 38:6–40:17).

### LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quotations and citation omitted). Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

ANALYSIS

Ms. Jones's complaint raises three causes of action against Convergys. First, she alleges that Convergys provided her with reasonable accommodation but unlawfully removed them prior to her termination.[10] Second, Ms. Jones's complaint also contends that her disability motivated Convergys to terminate her employment.[11] Finally, Ms. Jones's complaint asserts that Convergys terminated her employment in retaliation for commenting about not receiving coaching in an employment survey, telling Convergys about her stenosis, requesting reasonable accommodation, and complaining that the reasonable accommodations were removed.[12] Because the first two causes of action fail for the same reason, they are discussed together while the final cause of action is addressed separately below.

**I.   REMOVAL OF ACCOMMODATIONS AND DISABILITY DISCRIMINATION**

Convergys asserts that it is entitled to summary judgment on the first two causes of action because Ms. Jones was not a qualified individual under the ADA. The court agrees. The ADA

---

[10] ECF No. 3 at 7-9.

[11] ECF No. 3 at 9-12.

[12] ECF No. 3 at 12-15.

9

prohibits discrimination against "a qualified individual with a disability because of the disability of such individual[.]" 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee[.]" *Id.* § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate under the ADA, the plaintiff must show that: (1) she is disabled under the ADA; (2) she is a qualified individual under the ADA; and (3) she requested a plausibly reasonable accommodation, and defendant failed to reasonably accommodate her. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). Similarly, to establish a prima facie case for disability discrimination, Ms. Jones must establish elements (1) and (2) stated in the previous sentence. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). Convergys does not dispute that Ms. Jones's condition constitutes a disability for purposes of the ADA. Therefore, the court starts and ends its analysis with the second element of Ms. Jones's prima facie case: whether she is a qualified individual under the ADA.

When Convergys removed reasonable accommodations and later terminated Ms. Jones's employment, she was not a qualified individual with a disability. The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To determine whether an individual is qualified, the court must first decide whether the plaintiff can perform the essential functions of the job. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). Second, "if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court

determines whether any reasonable accommodation by the employer would enable her to perform those functions." *Id*.

Here, Ms. Jones concedes that she was unable to perform the essential functions of her position as a customer support associate with or without accommodations. In her SSDI application, under oath, Ms. Jones states that she became unable to work due to her disabling condition on March 9, 2016, the same date as her employment with Convergys was terminated. (ECF No. 27, Ex. 10, p. 1; *Id*. Ex. 11, p. 1). When an ADA plaintiff has made prior representations of total disability, summary judgment in favor of defendant is proper unless the plaintiff presents strong countervailing evidence that she is in fact qualified, as defined by the ADA, to perform the essential functions of the job. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("[A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation.").

Ms. Jones has not provided strong, countervailing evidence refuting her assertions in her disability claim. In fact, when provided an opportunity to reconcile the conflict between her ADA claim and her earlier claim of total disability at her deposition, Ms. Jones affirmed that she is totally disabled and added that, had she not been terminated, she was going to have to take time off from Convergys because of her condition. (ECF No. 27, Ex. 1, 211:18–222:17). Accordingly, Ms. Jones's claim of disability discrimination fails because she concedes that she was not a qualified individual with a disability when her employment was terminated on March 9, 2016.

Although Convergys removed Ms. Jones's accommodation one or two days prior to the date that Ms. Jones concedes she was unable to do her job with reasonable accommodations, this does not save her first cause of action. Indeed, nothing in the record establishes that Ms. Jones was able to perform the essential functions of her job on March 7th or 8th but inexplicably transformed into someone who could not on March 9th. Because Ms. Jones has not shown that she was able to perform the essential functions of her job and failed to offer a sufficient explanation for her contradictory statements, the court concludes that Ms. Jones is not a qualified individual under the ADA as to her reasonable accommodation and discrimination claims. Accordingly, the court recommends summary judgment be entered in favor of Convergys as to Ms. Jones's first two causes of action.

## II.    RETALIATION

Convergys asserts that it is entitled to summary judgment on the retaliation claim because Ms. Jones is unable to establish that her protected opposition was the but for cause of the adverse action.[13] The court agrees. The ADA's anti-retaliation provision states "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . .  under [the ADA]." 42 U.S.C. § 12203(a). An individual who is adjudged not to be a "qualified individual with a

---

[13] Convergys also argues that the retaliation claim must fail because Ms. Jones is unable to show that her termination for "poor performance" was a pretext for retaliation or discrimination. ECF No. 27 at 21 n.46. The court declines to consider this argument as part of the summary judgment motion because arguments perfunctorily raised in footnotes are not properly presented. *United States v. Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019) (stating that arguments raised in footnotes are waived). In any event, such argument is unnecessary because Ms. Jones is unable to make a prima facie case of retaliation or discrimination.

disability" may still pursue a retaliation claim under the ADA. *Heiman v. United Parcel Serv., Inc.*, 12 F. App'x 656, 664 (10th Cir. 2001).

To establish a prima facie case of retaliation under the ADA, the plaintiff must demonstrate that: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *C.R. England, Inc.*, 644 F.3d at 1051. To defeat a motion for summary judgment, the plaintiff must show that her protected activity was the "but for" cause of the alleged employment action and not merely a motivating factor. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, (2013). Here, Ms. Jones's retaliation claim fails as a matter of law for two reasons: (A) her report of stenosis to her employer and her original request for accommodation are insufficiently proximate to her termination to establish but for causation; and (B) although her alleged complaint for having her accommodations removed and her employee survey comment about coaching are sufficiently proximate to her termination, her concessions on the record preclude a prima facie finding of retaliation being the but for cause of her terminated employment.  Each reason is discussed in order below.

A. <u>Insufficient Proximity</u>

Ms. Jones has failed to establish adequate temporal proximity to show but for causation for two of her alleged protected activities under the ADA. "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001). The Tenth Circuit held that a one-and-a-half-month period between the

protected activity and adverse action may, by itself, establish causation; however, by contrast, a three-month period is insufficient. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Ms. Jones engaged in protected activity when she notified Convergys of her stenosis before her surgery in January 2015. Her employment was terminated fourteen months later. Similarly, Ms. Jones engaged in protected activity by requesting accommodations for her spinal stenosis in February 2015. *Wehrley v. Am. Family Mut. Ins. Co.,* 513 F. App'x 733, 740 (10th Cir. 2013) (holding a request for reasonable accommodation is protected activity under the ADA). Her March 9, 2016 termination occurred nearly thirteen months later. (ECF No. 3, ¶¶ 23, 37–38). Therefore, these two protected activities are too remote in time from her termination to infer a but for causal connection to a retaliatory motive. Accordingly, these retaliation claims fail as a matter of law.

### B.  Lack of But for Causation and Connection to Disability

Ms. Jones's final two retaliation bases both fail to keep her third cause of action alive in this action. Ms. Jones argues that temporarily relocating her to a desk without accommodations and away from her co-workers one or two days prior to her termination "supports an inference that her disability motivated [Convergys] to take adverse action against her." (ECF No. 3, ¶ 39). She also contends that she was fired for survey comment. (ECF No. 27, Ex. 1, 74:14–19, 173:14–25). The court disagrees. Although both events were sufficiently proximate to her termination, Ms. Jones's own statements undermine the court's ability to draw the necessary inferences to establish a but for causal connection to retaliation here. Each allegedly protected activity's failure to establish but for causation is discussed separately below.

First, Ms. Jones concedes that her alleged complaints about having her accommodations removed had nothing to do with her employment's termination. At her deposition and in her discovery responses, Ms. Jones admits that her termination was unrelated to any requests for accommodations or her spinal stenosis diagnosis. (ECF No. 27, Ex. 1, 74:14–19, 173:14–15). Instead, Ms. Jones attributes the primary cause for her termination to the negative survey comment she made about Ms. Landry's purported lack of coaching. (ECF No. 27, Ex. 1, 74:14–19, 173:14–25, 183:3–15; *Id.*, Ex. 5, p. 39). Because Ms. Jones disavows that her termination was connected in any way to her accommodation requests, the court cannot find that but for Ms. Jones's protected activity she would not have been fired. (ECF No. 27, Ex. 5, p. 36, 39; *Id.*, Ex. 1, 183:3–15, 173:6–15).[14]

Second, Ms. Jones's response in her employee survey of "What coaching?" also fails to establish a but for causation of retaliation because she admits that it was not protected opposition to discrimination. *C.R. England, Inc.*, 644 F.3d at 1051 (stating that the first element of a retaliation claim is showing that the plaintiff engaged in protected opposition to discrimination). Nothing in the record indicates Ms. Jones ever requested coaching as an accommodation. (ECF No. 3, ¶ 17; ECF No. 27, Ex. 1, 74:10–75:17). Moreover, Ms. Jones admitted in her deposition that seeking coaching had nothing to do with her disability. (ECF No. 27 Ex. 1, 173:6–25). Therefore, Ms. Jones cannot show that her response of "What coaching?" in her employee survey was challenging disability discrimination as opposed to what she viewed as poor

---

[14] *Nassar*, 570 U.S. at 360 (stating that retaliation claims require proof by a preponderance of the evidence that the adverse employment action would not have occurred but for, or in absence of, the protected activity).

supervision. Without evidence to substantiate her allegations, Ms. Jones maintains a retaliation claim in name only which is wholly inadequate to survive summary judgment. *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006) (stating that the non-movant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise" to defeat summary judgment). Accordingly, Ms. Jones is unable to establish a prima facie case of retaliation under the ADA, and the court recommends summary judgment be entered in favor of Convergys as to the third cause of action.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing analysis, it is hereby recommended that Convergys's Motion for Summary Judgment[15] be GRANTED and that all of Ms. Jones's claims against Convergys in this action be DISMISSED WITH PREJUDICE.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 19th day of June, 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[15] ECF No. 27.